UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROOSEVELT REED,

            Plaintiff,

  v.

ELEANOR VERNELL, XANDIS PHILLIPS, NANCY HENDERSON,

            Defendants.

NO. C14-5800 RJB-KLS

**REPORT AND RECOMMENDATION**
Noted For:  April 24, 2015

Before the Court is the Motion for Summary Judgment of Defendants Eleanor Vernell, Xandis Phillips, and Nancy Henderson.  Dkt. 12.  This 42 U.S.C. § 1983 lawsuit arises from *pro se* Plaintiff Roosevelt Reed's claims that Defendant unlawfully deducted amounts of money from his prison postage account.  Dkt. 4.  The undersigned recommends that Defendants' motion for summary judgment (Dkt. 12) be granted and Plaintiff's claims dismissed with prejudice as frivolous.

**FACTS**

In his complaint, Mr. Reed alleges that funds from his prison postage account were unlawfully subjected to deductions in violation of his due process rights under the Fifth and Fourteenth Amendments.  Dkt. 4, p. 3.  He also contends that the deductions were made

REPORT AND RECOMMENDATION - 1

1  prematurely because they were made on February 7, 2012 and he was not released until April
2  16, 2012.  In his response to Defendants' motion, Mr. Reed states that he had "large amounts
3  of funds deposited into his Postage Account in preparation of International Correspondence.
4  Plaintiff changed his mind and decided to return the funds to the sender of funds which DOC
5  Policy 200.000 IV Postage Subaccount C allows stating 'funds will only be returned to the
6  sender of funds (Rev. 6/11).'"  Dkt. 14, at 2.
7       Mr. Reed argues that Defendants were acting without authority when they took
8  deductions from his postage account but does not dispute the facts contained in the declarations
9  supporting Defendants' motion for summary judgment.  According to Defendants, inmates in
10 Department of Corrections (DOC) prisons maintain their funds in a DOC-managed trust
11 account.  Dkt. 12-1, Exhibit 1, Declaration of Dell-Autumn Witten, DOC Policy Program
12 Manager, at 1.  An inmate's trust account is comprised of the following sub-accounts:
13 spendable account; savings subaccount; work release savings subaccount; postage subaccount;
14 education subaccount; medical subaccount; and Community Services Revolving Fund (CSRF)
15 subaccount.  *Id.*, Witten Decl., Attachments A-D, DOC Policy 200.000, at Attachment 6.
16 Funds are deposited into the subaccount designated by the sender; if no subaccount is
17 specified, the funds are deposited into the spendable account.  *Id.*, Exhibit 1, Attachments A-D.
18 Deposits into inmate accounts are subject to deductions pursuant to RCW 72.09.480 and DOC
19 Policy 200.000. See Exhibit 1, Witten Decl., Attachments A-D, Attachment 3.
20      Pursuant to RCW 72.09.480(2), any funds an inmate receives in addition to his wages
21 or gratuities, and excluding settlements or awards from legal actions, are subject to deductions.
22 The statute mandates the following deductions: five percent for the crime victims'

compensation account as provided in RCW 7.68.045; ten percent to a DOC personal inmate savings account; twenty percent for payment of legal financial obligations for inmates who have them; twenty percent for any child support owed under a support order; twenty percent to the DOC to contribute to the cost of incarceration; and twenty percent for any civil judgment for assault, if applicable. RCW 72.09.480(2).

Pursuant to RCW 72.09.480(7), the deductions required under RCW 72.09.480(2) do not apply to money received by the DOC on behalf of an inmate if the funds are designated for postage expenses. That money is deposited into the postage subaccount and "may only be used for the payment of postage expenses and may not be transferred to any other account or purpose." RCW 72.09.480(7). However, incoming postage funds are subject to a twenty-percent deduction for existing DOC postage debt and any balance in an inmate's postage subaccount upon the offender's release from DOC jurisdiction is subject to deductions as outlined in RCW 72.09.480(2) and DOC Policy 200.000. RCW 72.09.480(7); *see* Exhibit 1, Witten Decl., Attachments A-D, at Attachment 6.

Between the months of January and July 2011, Mr. Reed's then-girlfriend, Jane Gregory, deposited $1,700.00 into his postage subaccount. Dkt. 12-2, Exhibit 2, Declaration of Daniel Lewis, DOC Trust Accounting Manager, at 2, Attachment A. On July 18, 2011, Mr. Reed attempted to send out $700.00 from his postage subaccount back to Ms. Gregory. *Id.*, Exhibit 2, Lewis Decl., Attachment B, at 1. According to the "chrono notes" maintained by DOC staff in Mr. Reed's Offender Management Network Information (OMNI) file, Mr. Reed told staff that he was trying to help Ms. Gregory with moving expenses and did not want deductions taken from the funds. After he realized that the postage subaccount was subject to

REPORT AND RECOMMENDATION - 3

deductions on his release, he began trying to send the funds back to Ms. Gregory. Superintendant Vernell sent an email to Mr. Reed via his counselor, advising him that pursuant to DOC Policy 200.000, he could not transfer money out of his postage account. *Id.*, Exhibit 2, Lewis Decl., Attachment C, entry dated July 26, 2011.

At that time, Policy 200.000, Attachment 6(IV)(C), provided that postage "[f]unds will only be returned to sender of funds." Dkt. 12-1, Exhibit 1, Witten Decl., Attachment A, DOC Policy 200.000, Trust Accounts for Offenders, revised June 20, 2011. That provision was intended to allow return when there was an issue with the funds, or when the offender wanted to reject the incoming funds. Under RCW 72.09.480(7), money received for postage "may only be used for the payment of postage expenses and may not be transferred to any other account or purpose," and DOC Policy reiterated that limitation. *Id.*, Attachment A. As such, the statute and policy were intended to allow funds to enter without deductions so that they could be used for the sole purpose of postage payment; the purpose was not for offenders and their friends and family to use the postage subaccount as a savings account for the temporary safekeeping of money to be withdrawn at their discretion. See RCW 72.09.480(7). The statute also envisioned that funds unused for postage purposes would be subject to the normal statutory deductions, not withdrawn shortly before release to avoid any deductions on those funds. *See* RCW 72.09.480(7).

Despite this information, on August 24, 2011, Ms. Gregory made another $1,000.00 deposit into Mr. Reed's postage subaccount. Dkt. 12-2, Exhibit 2, Lewis Decl., at ¶ 5, Attachment D. DOC Trust Accounting Manager Dawn Thompson telephoned Mr. Reed and explained that any unused postage funds would be subject to statutory deductions of forty-five-

REPORT AND RECOMMENDATION - 4

percent upon Mr. Reed's release. *Id.*, Exhibit 2, Lewis Decl., at ¶ 5, Attachment C, entry dated August 25, 2011. She asked Mr. Reed if he still wanted the money deposited and he said yes, and told Ms. Thompson that he would have Ms. Gregory call for further clarification. *Id.,* Exhibit 2, at ¶ 5, Attachment C, entry dated August 25, 2011. Ms. Gregory called Ms. Thompson on August 31, 2011, and stated that she and Plaintiff had researched the RCWs and were okay with the deductions. *Id.*, Exhibit 2, Lewis Decl., at ¶ 6, Attachment C, entry dated August 31, 2011. The deposit was allowed. *Id.*, Exhibit 2, Lewis Decl., at ¶ 5, Attachment E.

On December 20, 2011, while at Reynolds Work Release, Mr. Reed requested to return all of the funds from his postage account to Ms. Gregory and that request was denied. *Id.*, Exhibit 2, Lewis Decl., at ¶ 7, Attachment C, entry dated December 20, 2011; Dkt. 12-2, Exhibit 3, Declaration of Nancy Henderson, DOC Community Corrections Officer 3 at the Reynolds Work Release, at ¶ 3. At the time, DOC Policy provided that postage funds would only be returned to the sender of funds "upon approval," which was not granted in this instance. *See* Dkt. 12-1, Witten Decl., Exhibit 1, Attachment B, DOC Policy 200.000, revised November 1, 2011, at Attachment 6. Pursuant to RCW 72.09.480(7) and DOC Policy, the requirement was still that money received for postage could only be used for the payment of postage expenses and not be transferred to any other account or used for any other purpose. *Id.* Mr. Reed contends in his complaint that the request he made in December was initially approved by Ms. Xandis Phillips "the head CCO" at the Reynolds Work Release, but her approval was overruled by Superintendent Vernell. Dkt. 4, at 3.

On January 24, 2012, Mr. Reed completed an Inmate Banking System Check Request to send $3,000.00 from his postage account to Ms. Gregory. Dkt. 12-2, Exhibit 2, Lewis Decl.,

REPORT AND RECOMMENDATION - 5

at ¶ 8, Attachment F. On February 2, 2012, DOC staff explained to Mr. Reed and Ms. Gregory that DOC would allow the transfer of funds back to Ms. Gregory, but would treat the funds as if Mr. Reed were being released. *Id.*, Exhibit 2, Lewis Decl., at ¶ 8, Attachment C, entry dated February 2, 2012, Attachment F; Exhibit 3, at ¶ 4. Therefore, the funds would be subject to the applicable deductions under RCW 72.09.480(2). Accordingly, of the $3,000.00 in Mr. Reed's postage subaccount, a five percent deduction would be taken for the crime victims' compensation account as provided in RCW 7.68.045; a twenty percent deduction would be taken for payment of Mr. Reed's legal financial obligations; and twenty percent would be taken for Mr. Reed's cost of incarceration, for a total of a forty-five percent deduction. As a result, fifty-five percent, or $1,650.00, would be returned to Ms. Gregory. Pursuant to this arrangement, Mr. Reed completed a second Inmate Banking System Check Request in the amount of $1,650.00, which was processed after being signed by Defendants Henderson and Phillips, and those funds were sent to Ms. Gregory. Dkt. 12-2, Exhibit 2, Lewis Decl., at ¶ 8, Attachment F; Exhibit 3, at ¶ 5.

On February 7, 2012, Mr. Reed filed Grievance Log ID 1204608 at Reynolds Work Release. Dkt. 12-2, Exhibit 2, Lewis Decl., Attachment G (letter from DOC dated April 10, 2012 referring to grievance and appeal). Mr. Reed was advised on February 24, 2012 in the response to his grievance that the issue was not grievable because of Washington statutes regarding mandatory deductions on release. *Id.* Mr. Reed's appeal of that decision was denied on March 9, 2012. *Id.*, Exhibit 2, Lewis Decl., Attachment G. On April 16, 2012, Mr. Reed was released from the Reynolds Work Release facility and DOC total confinement. Dkt. 12-2, Exhibit 3, Henderson Decl., at ¶ 2.

REPORT AND RECOMMENDATION - 6

Mr. Reed did not challenge the deductions until after he was readmitted to prison, on a new conviction for first degree assault against Ms. Gregory. Dkt. 12-2, Exhibit 4, Declaration of Katrina Toal, DOC Legal Secretary, Offender Management Network Information (OMNI) Legal Face Sheet, at 8, 11. On June 2, 2014, Mr. Reed filed a tort claim (Tort Claim #31080900) with the Washington Department of Enterprise Services, Office of Risk Management. That claim was denied, with the determination that the "deductions taken were and are appropriate to the circumstances and comply with applicable RCW and policy." Dkt. 4 (Complaint), Exhibit 4, at 8-9.

**STANDARD OF REVIEW**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there
REPORT AND RECOMMENDATION - 7

1  exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A
2  plaintiff must "produce at least some significant probative evidence tending to support" the
3  allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir.
4  1990).

**DISCUSSION**

Mr. Reed contends that Defendants took deductions from his postage account without due process of law.  The Due Process Clause of the Fourteenth Amendment determines what process is due before the state may deprive someone of a protected liberty interest.  *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).  The Due Process Clause confers both procedural and substantive rights.  *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996).  Procedures created by a valid act of a state legislature and the legislative process satisfy the requirements of procedural due process.  *See Halverson v. Skagit County*, 42 F.3d 1257, 1260-61 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995).  The substantive component of the Due Process Clause protects individuals from the arbitrary deprivation of their liberty by government.  *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998).

**1)      Procedural Due Process**

Under 28 U.S.C. §1983, a procedural due process claim has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.  *Id*.  Inmates have a property interest in their incoming funds.  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

The Due Process Clause does not prohibit every deprivation by the state of an individual's property. Only those deprivations carried out without due process are actionable under 42 U.S.C. § 1983. *Halverson*, 42 F.3d at 1260. A deprivation pursuant to a duly authorized legislative action satisfies procedural due process requirements. *Id*. at 1260-61; *accord In re Metcalf*, 92 Wash. App. 165, 176, 963 P.2d 911 (1998) (when a legislative enactment is challenged, the legislative process provides all the process due). Where a deprivation results from an established state law or procedure, the existence of an adequate post-deprivation remedy is irrelevant. *See Logan v. Zimmerman Brush Co*., 455 U.S. 422, 433-37 (1982). "If a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997) (quotation omitted).

RCW 72.09.480 was first enacted in 1995 but has undergone a number of amendments since that time. *Anderson v. State, Dep't of Corr.*, 159 Wash. 2d 849, 856, 154 P.3d 220, 224 (2007). The language regarding postage funds was added to RCW 72.09.480 pursuant to Substitute House Bill 1143, which was passed by the Washington Senate on April 13, 1999; passed by the Washington House of Representatives on April 23, 1999; approved by the Governor of Washington on May 14, 1999; and became effective July 25, 1999. Substitute H.B. 1143, 56th Leg., Reg. Sess. (Wash. 1999); *see* RCW 72.09.480(5) (1999). The Washington State Legislature is a legislative body that enacts laws for the State of Washington and there is nothing to suggest that the enactment of Substitute House Bill No. 1143 deviated in any way from the normal processes.

Thus, Mr. Reed received all the process to which he was due when DOC acted pursuant to RCW 72.09.480. Moreover, even an unauthorized intentional deprivation of property by a state employee or official does not constitute a due process violation under the Fourteenth Amendment if an adequate post-deprivation remedy is available under state law. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *see, e.g., Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (negligent loss of property or injury to property by state official does not violate due process so long as the state provides a meaningful post-deprivation remedy for the loss or injury).

The record reflects that adequate post-deprivation processes were available to Mr. Reed. Mr. Reed availed himself of DOC's grievance process. Washington State also provides a tort process to challenge property claims. *See* RCW 72.02.045 (state and/or state officials may be liable for the negligent or intentional loss of inmate property); RCW 4.92.090 (state liable for the tortious conduct of state officials). Mr. Reed filed a tort claim. These state processes have been found to be an adequate post-deprivation remedy for improper deductions. *Wright*, 219 F.3d at 918 (inmate has adequate post-deprivation remedy for refund through established prison grievance procedure or filing tort claim with the state). Thus, Mr. Reed has failed to state a claim for a violation of his procedural due process rights and the claim should be dismissed with prejudice.

**2)    Substantive Due Process**

There is no evidence that the deductions levied on Mr. Reed's funds were arbitrary. The deductions dictated by statute – payment of the cost of incarceration, legal financial

obligations, and crime victims' compensation – are directly and rationally related to legitimate state interests in funding the criminal justice system and compensating crime victims. *See e.g., Turner v. Safley*, 482 U.S. 78, 89 (1987).  Mr. Reed provides no evidence to the contrary.

**B.     Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).   Mr. Reed has failed to raise material issues of fact relating to the existence of a constitutional violation and therefore, it is not necessary to address the question of qualified immunity.

**C.     28 U.S.C. § 1915(g)**

A case is frivolous if it has no basis in law or fact. *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  Under the Prison Litigation Reform Act (PLRA), a prisoner will be denied *in forma pauperis* status if he has filed three or more actions or appeals that have been dismissed as frivolous, malicious, or failing to state a claim.  28 U.S.C. § 1915(g); see 28 U.S.C. § 1915(e)(2).

Defendants contend that Mr. Reed's claims are frivolous because they have no basis in fact or law and he was told repeatedly that his postage funds were nontransferable and would

REPORT AND RECOMMENDATION - 11

be subject to deductions upon his release.  Despite this information, he continued to have Ms. Gregory deposit large amounts of money into his postage subaccount.  Mr. Reed was also aware of and began to pursue his appropriate state remedies, but apparently abandoned those pursuits in favor of suing Defendants in federal court.  The undersigned concludes that Mr. Reed's claims are without merit and are frivolous.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (Dkt. 12) be **GRANTED;** and that Plaintiff's claims against Defendants be **dismissed with prejudice.**  It is further recommended that the dismissal count as a strike under 28 U.S.C. § 1915(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 24, 2015**, as noted in the caption.

**DATED** this   6th   day of April, 2015.

Karen L. Strombom
United States Magistrate Judge